# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CUSTOM CONTAINER
SOLUTIONS, LLC, *et al.*,

    Plaintiffs/Counterclaim
Defendants,

v.

CENTURY SURETY COMPANY,

    Defendant/Counterclaim
Plaintiff.

No. 4:20-CV-01793

(Chief Judge Brann)

## MEMORANDUM OPINION

### JUNE 10, 2022

## I.   BACKGROUND

Custom Container Solutions, LLC, Valley Can Custom Container, LLC, and Custom Container Valley Can Real Estate, LLC (collectively "Plaintiffs") filed suit against Century Surety Company ("Century") in the Court of Common Pleas of Union County, Pennsylvania, alleging breach of contract (Count One), detrimental reliance (Count Two), and bad faith (Count Three), related to Century's decision to deny insurance coverage for damage caused by a fire at Plaintiffs' property.[1] Century thereafter removed the matter to this Court.[2]

---

[1]   Doc. 1-2.
[2]   Doc. 1.

This disputes arises out of a commercial property policy issued by Century to Plaintiffs with effective dates of November 22, 2019 to November 22, 2020 (the "Policy").[3] The Policy provided property coverage—including building and personal property—along with business income coverage.[4] The Policy also contained a number of protective safeguard endorsements that limited or denied coverage if the endorsements were not met.[5] Those endorsements required, *inter alia*, that Plaintiffs store any "[u]sed or soiled rags . . . in self-closing metal containers and remove[ them] daily" and maintain a "[f]ully functional, actively engaged NFPA 33 approved Spray booth with proper exhaust system and fire extinguishing system."[6]

On May 16, 2020, a fire occurred in a spray paint booth (the "Booth") on Plaintiffs' property that damaged both the Booth and the building that housed the Booth.[7] The Booth had been shut down at approximately 2:45 p.m. on May 15, 2020.[8] The fire was discovered by Plaintiffs' employees on the evening of May 16 and was extinguished by the William Cameron Engine Company at approximately 9:20 p.m., although the Booth and building nevertheless sustained significant

---

[3]   Doc. 11-2 at 2.
[4]   *Id.* at 2-5.
[5]   *Id.* at 5-8.
[6]   *Id.* at 6.
[7]   *Id.* at 9; Doc. 15 at 5.
[8]   Doc. 15 at 5-6.

damage from the fire.[9] Two days later, Plaintiffs filed a claim with Century pursuant to the Policy.[10]

Century hired NEFCO Fire Investigations ("NEFCO") to conduct a fire cause and origin investigation, as well as a fire scene analysis.[11] NEFCO inspected the building and Booth on May 20, 2020 and June 9, 2020.[12] NEFCO thereafter issued a report in which it concluded that cotton rags were laying on the floor near where the fire had occurred, and the fire suppression system did not function properly at the time of the fire.[13] NEFCO ultimately determined that the fire was caused by a spontaneous combustion of cotton rags that were left in the Booth.[14]

As a result of this report, Century denied Plaintiffs' insurance claim.[15] Century informed Plaintiffs that it had denied their claim because certain protective safeguards were not employed at the time of the fire, including: (1) the absence of a fully functional, actively engaged NFPA 33 approved Spray booth with proper exhaust system and fire extinguishing system; (2) Plaintiffs' failure to keep all flammables in an approved storage cabinet; and (3) Plaintiffs' failure to store used or soiled rags in a self-closing metal container and remove them daily.[16]

---

[9]   *Id.* at 6.
[10]  Doc. 11-2 at 9.
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*; Doc. 11-6 at 3-4.
[14]  Doc. 11-6 at 6.
[15]  Doc. 15 at 11; Doc. 1-3 at 49-55.
[16]  Doc. 15 at 11-12; Doc. 1-3 at 54.

Century has now moved for summary judgment, asserting that judgment is appropriate in its favor as to Plaintiffs' claims of detrimental reliance, bad faith, and breach of contract, and as to Century's counterclaim for declaratory judgment.[17] Century first argues that summary judgment is appropriate for Plaintiffs' detrimental reliance claim because Century made no misrepresentations; any alleged misrepresentations were instead made by Plaintiffs' insurance brokers.[18]

Second, Century contends that judgment should be entered in its favor as to Plaintiffs' claim of bad faith since Century properly investigated Plaintiffs' insurance claim and had a reasonable basis to deny that claim based upon the NEFCO report that determined Plaintiffs failed to store used or soiled rags in a self-closing metal container and remove them daily, and that Plaintiffs' fire extinguishing system was not fully functional and actively engaged.[19] Third, Century asserts that this Court should find that the Policy does not provide coverage for Plaintiffs' claim related to the fire, as the protective safeguard endorsements were prerequisites to coverages and the evidence—Century alleges—unambiguously establishes that Plaintiffs failed to comply with two of the endorsements, meaning that Century properly denied coverage.[20]

---

[17] Doc. 11.
[18] Doc. 12 at 7-8.
[19] *Id.* at 8-10.
[20] *Id.* at 10-14.

Plaintiffs respond that summary judgment should largely be denied.[21] Although Plaintiffs concede that summary judgment is warranted as to their detrimental reliance claim,[22] they argue that the remainder of Century's motion fails. With respect to their claim of bad faith, Plaintiffs assert that there is ample evidence of bad faith, including evidence that soiled rags were properly stored and removed daily, that cotton rags discovered in the Booth were not discovered for weeks after the fire and may have been introduced into the Booth after the fire, and that Plaintiffs had installed a fully functioning fire suppression system in the Booth.[23] Finally, Plaintiffs argue that summary judgment should be denied as to its breach of contract claim because the endorsements are ambiguous, Plaintiffs maintained a fully functioning fire extinguishing system, and they ceded control of that system to another entity for maintenance purposes.[24]

Century has filed a reply brief, and Plaintiffs have filed a sur-reply brief, rendering this matter ripe for disposition.[25] For the following reasons, the motion will be granted in part.

---

[21]   Doc. 15.

[22]   *Id.* at 15. Because Plaintiffs concede that summary judgment is warranted in Century's favor as to Plaintiffs' detrimental reliance claim, the Court will not address that claim in this Memorandum and will enter judgment in favor of Century as to that claim.

[23]   *Id.* at 16-22.

[24]   *Id.* at 23-25.

[25]   Docs. 16, 20.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[27] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[28] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[29]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[30] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[31] The nonmoving party

---

[26]   Fed. R. Civ. P. 56(a).
[27]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[28]   *Clark*, 9 F.3d at 326.
[29]   *Id*.
[30]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[31]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[32] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[33]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[34] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[35] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[36] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[37]

### B.   Analysis

The dispute in this matter largely involves questions regarding the language of the Policy and, "[i]n interpreting the relevant provisions of the insurance policies at issue . . . [this Court is] guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder."[38] It is well-established that, in

---

[32]   *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

[33]   *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (internal quotation marks omitted).

[34]   *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[35]   *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[36]   Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[37]   Fed. R. Civ. P. 56(c)(3).

[38]   *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020).

interpreting insurance policies, courts must "effectuate the intent of the contracting parties as reflected by the written language of the insurance policies," which requires that, "[i]f policy terms are clear and unambiguous, [courts] give those terms their plain and ordinary meaning, unless they violate a clearly established public policy."[39]

"Conversely, when a provision of a policy is ambiguous, the policy provision is to be construed in favor of the policyholder and against the insurer, as the insurer drafted the policy and selected the language which was used therein."[40] "Policy terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts."[41] In reading the terms of a contract, "a court should be careful not to create an ambiguity and, likewise, it should avoid rewriting the policy language in such a way that it conflicts with the plain meaning of the language."[42]

### 1.    Bad Faith

The Court first considers Plaintiffs' claim of bad faith. "[T]o prevail in a bad faith insurance claim . . . a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a

---

[39]   *Id.*
[40]   *Id.*
[41]   *Id.* (internal quotation marks omitted).
[42]   *Lucker Mfg., A Unit of Amclyde Engineered Prod., Inc. v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir. 1994).

reasonable basis in denying the claim."[43] Mere negligence or bad judgment is not sufficient to establish bad faith,[44] and any inquiry as to bad faith is "fact specific and depend[s] on the conduct of the insurer toward its insured."[45] In Pennsylvania, clear and convincing evidence "requires evidence clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy of the truth of the precise facts in issue."[46]

Viewed under this standard, the Court concludes that Century is not entitled to summary judgment as to Plaintiffs' claim of bad faith, as a reasonable juror could conclude that Century lacked a reasonable basis for denying Plaintiffs' insurance claim and knew of, or recklessly disregarded, its lack of such a reasonable basis.

First, as to Century's contention that Plaintiffs violated the endorsement related to the removal of used or soiled rags, the NEFCO investigation of the fire discovered cotton rags in the Booth, some of which were covered in soot and located in a pile of debris left by the fire.[47] It is undisputed that the Booth was shut down at approximately 2:45 p.m. the day prior to the fire, and that Plaintiffs' business was shut down for the weekend.[48] It may therefore reasonably be assumed that these rags

---

[43] *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).

[44] *Id.* at 373-74.

[45] *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 547 (Pa. Super. Ct. 2020), *appeal denied*, 242 A.3d 309 (Pa. 2020).

[46] *Berg v. Nationwide Mut. Ins. Co., Inc.*, 189 A.3d 1030, 1037 (Pa. Super. Ct. 2018) (internal quotation marks omitted).

[47] Doc. 11-6 at 4, 17; Doc. 11-7 at 2-4.

[48] Doc. 15 at 6.

were left in the Booth for more than twenty-four hours and were present during the fire,[49] which Century argues means that Plaintiffs violated the protective safeguard endorsement that required Plaintiffs store any used or soiled rags in self-closing metal containers and remove them daily from the Booth.[50]

Century's argument, however, ignores a key provision of that endorsement: the endorsement only requires that "[u]sed or soiled rags" be removed from the Booth each day.[51] The plain and unambiguous language of the protective safeguard endorsement therefore does not apply to clean rags. Nothing in the NEFCO report indicates that the rags that NEFCO may have discovered in the Booth were used or in any way soiled, nor does Century point to any evidence in support of such a conclusion.[52] Accordingly, the evidence available to Century—both at the time that coverage was denied and now—does not definitively indicate that Plaintiffs failed to properly store and remove used or soiled rags on a daily basis. In the absence of any such evidence, the Court cannot conclude that Century had a reasonable basis to

---

[49] Although Plaintiffs dispute whether rags were present in the Booth during the fire, Doc. 15 at 16-18, the Court need not resolve that issue at this time because summary judgment must be denied regardless of the potential presence of rags during the fire.

[50] Doc. 12 at 10.

[51] Doc. 11-2 at 6; Doc. 11-4 at 72.

[52] *See* Doc. 11-6. The NEFCO report does state that the "fire was the result of the spontaneous combustion of the discarded cotton rags" and notes that "[f]lammable liquids were used during the painting and clean-up process, and the rags used with these materials required proper disposal . . ." Doc. 15-1 at 103. However, the report does not actually connect the rags on the floor of the Booth with rags used to clean flammable materials. And even if the Court could infer some connection, the NEFCO report provides no basis to support a conclusion that the rags in the Booth were soiled with combustible materials, other than the report writer's *ipse dixit*.

deny coverage on that ground, and a reasonable juror could conclude that Century recklessly disregarded its lack of a reasonable basis in denying the claim.

Century further argues that coverage was properly denied because Plaintiffs failed to comply with the endorsement that they utilize a "fully functional, actively engaged NFPA 33 approved Spray booth with proper exhaust system and fire extinguishing system" and "[m]aintain the protective safeguards . . . over which [Plaintiffs] have control[] in complete working order."[53] As the fire suppression system that Plaintiffs had installed did not engage during the fire—there was a loose fitting in the system that permitted pressure to dissipate before the system was fully activated[54]—Century argues that Plaintiffs failed to comply with that endorsement.[55] Even assuming that the terms of that endorsement are clear and unambiguous, and that Plaintiffs did not strictly comply with that endorsement due to the failure of the fire suppression system, the Court cannot conclude that summary judgment is appropriate.

The Supreme Court of Pennsylvania has long recognized that "substantial compliance with a condition subsequent [of an insurance policy is] sufficient" although "strict compliance is necessary where the condition is in the nature of an

---

[53]  Doc. 11-4 at 99; Doc. 12 at 10.
[54]  Doc. 11-6 at 4.
[55]  Doc. 12 at 10.

absolute promise in reference to the risk."[56] Where a condition of an insurance policy is subject to the doctrine of substantial compliance:

> One must make an honest, conscientious effort to perform an obligation or requirement before he can assert that his performance was substantial. The equitable doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right may not be forfeited by reason of mere technical, inadvertent, or unimportant omissions or defects.[57]

As courts have explained, "a condition precedent and a condition subsequent are fundamentally different: a condition precedent must occur before performance under a contract arises, while a condition subsequent acts to discharge a contractual duty after it has already occurred."[58] In other words,

> A condition subsequent is a condition that, if performed or violated, as the case may be, defeats the contract, or one that, if not met by one party, abrogates the other party's obligation to perform. A condition subsequent presumes a valid contract and refers to a future event, which divests a preexisting contractual liability. Thus, a contract that is conditioned to become void on a specified event is one subject to a condition subsequent.[59]

The requirement here that Plaintiffs "[m]aintain the" fire suppression system "in complete working order" is a condition subsequent, as it creates a forward-looking obligation for Plaintiffs to maintain that system and requires continuous

---

[56] *Blue Ridge Textile Co. v. Travelers Indem. Co.*, 181 A.2d 295, 300 (Pa. 1962).

[57] *Id.* at 300-01 (ellipsis and internal quotation marks omitted).

[58] *Vill. Beer & Beverage, Inc. v. Vernon D. Cox & Co.*, 475 A.2d 117, 122 (Pa. Super. Ct. 1984) (quoting Restatement (Second) of Contracts §§ 224, 230 (1981)).

[59] *Vandergrift v. Pennsauken Sch. Dist.*, No. CV 12-7646 (JS), 2017 WL 6566139, at *11 (D.N.J. Dec. 22, 2017) (quoting 17A C.J.S. Contracts 451)).

12

future action.[60] Plaintiffs therefore need not have strictly complied with that endorsement but, rather, need only have substantially complied with the requirement[61] that they maintain a fire suppression system "in complete working order."[62] There is, at a minimum, a genuine dispute of material fact as to whether Plaintiffs substantially complied with that endorsement.

There is no dispute that Plaintiffs initially installed a functioning fire suppression system.[63] Furthermore, Plaintiffs hired a company, Susquehanna Fire Equipment Company ("Susquehanna"), to maintain that system, inspect it every six months, and certify that the system was operational.[64] Susquehanna inspected Plaintiffs' fire suppression system on December 10, 2019—approximately five months prior to the fire—and certified that the system was "free from obstruction and operable" and was generally in good condition.[65]

Unfortunately, either Susquehanna's inspection in December 2019 was inaccurate, or in the subsequent months a fitting in the system loosened. In either

---

[60]   *See J. B. Liebman & Co. v. Aetna Cas. & Sur. Co.*, 188 A. 100, 101 (Pa. Super. Ct. 1936) (insurance contract provision that required that "[o]ne private watchman (watchmen) employed exclusively by the Assured will be on duty within the premises at all times when the premises are not regularly open for business while this Policy is in force, and each such watchman will make at least hourly rounds of the premises" was "a condition subsequent, a breach of which releases the insurer, but the obligation must not be so strictly construed as to effect a result which the parties cannot be reasonably presumed, under all the circumstances of the case, to have intended").

[61]   *Blue Ridge Textile Co.*, 181 A.2d at 300.

[62]   Doc. 11-4 at 99; Doc. 12 at 10.

[63]   *See* 11-2 ¶ 12; Doc. 11-6 at 3-4; Doc. 11-14 ¶¶ 26-33; Doc. 12 at 3; Doc. 15-1 at 13, 18.

[64]   Doc. 15-1 at 13-15.

[65]   *Id.* at 15; *see id.* at 14-18; Doc. 1-3 at 78; Doc. 15-1 at 91.

event, the fire suppression system was not fully operational and failed to properly deploy at the time of the fire in May 2020. It is therefore apparent that Plaintiffs failed to literally maintain a fire suppression system in complete working order.

However, based on Plaintiffs' actions in: (1) outsourcing maintenance of that system to a company that specialized in such systems; (2) ensuring that the system was certified as operational every six months; and (3) receiving such a certification only months prior to the fire, a reasonable individual could conclude that Plaintiffs had substantially complied with the endorsement requiring the maintenance of the fire suppression system—particularly since Century bears the burden of proof with respect to any protective endorsement.[66] Because it would be reasonable to conclude that Plaintiffs made "an honest, conscientious effort to"[67] comply with the endorsement, a reasonable juror could also conclude that Plaintiffs sustained their burden to prove by clear and convincing evidence that Century "did not have a reasonable basis for denying benefits under the policy and . . . knew or recklessly disregarded its lack of a reasonable basis in denying the claim."[68] Consequently, the

---

[66] *See Miller v. Bos. Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966) ("A defense based on an exception or exclusion in a policy is an affirmative one, and the burden is cast upon the defendant to establish it"); *Berenato v. Seneca Speciality Ins. Co.*, 240 F. Supp. 3d 351, 356 (E.D. Pa. 2017) (insurance companies bear "the burden of demonstrating the applicability of any policy exclusions, such as the protective safeguards endorsement" (internal quotation marks omitted)).

[67] *Blue Ridge Textile Co.*, 181 A.2d at 300.

[68] *Berg*, 189 A.3d at 1037.

Court concludes that summary judgment must be denied as to Plaintiffs' claim of bad faith.

### 2.     Breach of Contract

Finally, Century argues that it is entitled to summary judgment as to Plaintiffs' breach of contract claim, and as to its counterclaim for declaratory judgment that the Policy does not provide coverage for Plaintiffs' insurance claim.[69] Century argues that Plaintiffs breached the aforementioned protective safeguard endorsements and, because compliance with those safeguards was a condition of coverage, Century properly denied coverage.[70] Plaintiffs respond that the endorsements are ambiguous and, construing the language of the endorsements in their favor, they met all requirements contained in the insurance policy.[71]

As discussed above, regardless of whether the language of the endorsements is unambiguous, the Court concludes that genuine issues of material fact prevent it from rendering summary judgment in favor of Century. First, as to the endorsement requiring that Plaintiffs store any used or soiled rags in self-closing metal containers

---

[69]   Doc. 12 at 10-14.

[70]   *Id.*

[71]   Doc. 15 at 23-25. Plaintiffs further argue that they "ceded control of the system to Susquehanna" and therefore did not have control over the fire suppression system as required for the endorsements to apply to them. Doc. 15 at 25. The Court rejects this argument. Control means "to exercise power or influence over," *Control*, Black's Law Dictionary (10th ed. 2014), and Plaintiffs at all times had power over the fire suppression system and were able to do with the system as they wished, meaning they controlled the system. *Cf. Berenato*, 240 F. Supp. 3d at 358 (concluding that "Plaintiff exercised power over the sprinkler system, as he owned the property, had access to the system, and was able to shut it off at will—that the weather may have interfered with the *function* of the sprinkler system in no way diminishes plaintiff's 'control' over it").

and remove them daily from the Booth,[72] Century has cited no evidence that any rags in the Booth—if indeed there were any rags in the Booth during the fire[73]—were used or soiled, as required by the plain language of the insurance policy. In the absence of such evidence, the Court cannot conclude, at the summary judgment stage, that Century properly denied Plaintiffs' claim based on a violation of that endorsement.[74]

Second, there is a genuine dispute of material fact with regard to the question of whether Plaintiffs adequately complied with the endorsement that required they utilize a "fully functional, actively engaged NFPA 33 approved Spray booth with proper exhaust system and fire extinguishing system" and "[m]aintain the protective safeguards . . . over which [Plaintiffs] have control[] in complete working order."[75] While there is no dispute that the fire suppression system failed, as explained above, because that endorsement is a condition subsequent, it is subject to the doctrine of substantial compliance.[76]

---

[72] Doc. 12 at 10.

[73] *See* Doc. 15 at 16-18 (detailing evidence indicating a possibility that no rags were in the Booth, or that rags may have been introduced to the Booth after the fire).

[74] Although not relevant to the disposition of this motion, the parties dispute whether a failure to comply with a protective safeguard endorsement must have caused the loss, and Plaintiffs argue there is no evidence that rags in the Booth actually caused the fire. *Compare* Doc. 12 at 11-13 *with* Doc. 15 at 18. Pennsylvania law is clear that the failure to comply with a provision of an insurance contract need not have caused the plaintiffs' loss for that failure to prohibit recovery. *See Blue Ridge Textile Co.*, 181 A.2d at 300 (finding in favor of insurance company and holding "the fact that there may have been no causal relation between the violation and the loss is wholly without bearing on the question of whether plaintiff breached the conditions").

[75] Doc. 11-4 at 99.

[76] *Blue Ridge Textile Co.*, 181 A.2d at 300.

16

Several facts could result in a fact finder concluding that Plaintiffs' had substantially complied with the requirement of that endorsement, including that: Plaintiffs initially installed a functioning fire suppression system;[77] Plaintiffs hired Susquehanna to maintain that system, inspect it every six months, and certify that the system was operational;[78] and Susquehanna inspected the fire suppression system on December 10, 2019 and certified that the system was "free from obstruction and operable" and was generally in good condition.[79] This raises a genuine issue of material fact as to whether Plaintiffs substantially complied with this protective safeguard endorsement.

In sum, there remain genuine disputes of facts as to whether Plaintiffs complied with the terms of the insurance policy by storing any used or soiled rags in self-closing metal containers and removing them daily from the Booth, and by maintaining in complete working order a fire suppression system. Consequently, Century is not entitled to summary judgment as to Plaintiffs' claim of breach of contract, or Century's counterclaim for declaratory judgment.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Century's motion for summary judgment.

---

[77]   *See* 11-2 ¶ 12; Doc. 11-6 at 3-4; Doc. 11-14 ¶¶ 26-33; Doc. 12 at 3; Doc. 15-1 at 13, 18.
[78]   Doc. 15-1 at 13-15.
[79]   *Id.* at 15; *see id.* at 14-18; Doc. 1-3 at 78; Doc. 15-1 at 91.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge