# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CUSTOM CONTAINER SOLUTIONS, LLC, *et al.*, | No. 4:20-CV-01793 |
| Plaintiffs/Counterclaim Defendants, | (Chief Judge Brann) |
| v. | |
| CENTURY SURETY COMPANY, | |
| Defendant/Counterclaim Plaintiff. | |

## MEMORANDUM OPINION

### SEPTEMBER 22, 2022

## I.    BACKGROUND

Custom Container Solutions, LLC, Valley Can Custom Container, LLC, and Custom Container Valley Can Real Estate, LLC (collectively "Plaintiffs") filed suit against Century Surety Company ("Century") in the Court of Common Pleas of Union County, Pennsylvania, alleging breach of contract (Count One), detrimental reliance (Count Two), and bad faith (Count Three) related to Century's decision to deny insurance coverage for damage caused by a fire at Plaintiffs' property.[1] Century thereafter removed the matter to this Court and filed a counterclaim for declaratory judgment.[2]

---

[1]    Doc. 1-2.
[2]    Docs. 1, 4.

This disputes arises out of a commercial property insurance policy issued by Century to Plaintiffs with effective dates of November 22, 2019 to November 22, 2020 (the "Policy").[3] The Policy provided property coverage—including building and personal property—along with business income coverage.[4] The Policy also contained a number of protective safeguard endorsements that limited or denied coverage if the endorsements were not met.[5] Those endorsements required, *inter alia*, that Plaintiffs store any "[u]sed or soiled rags . . . in self-closing metal containers and remove[ them] daily" and maintain a "[f]ully functional, actively engaged NFPA 33 approved Spray booth with proper exhaust system and fire extinguishing system."[6]

On May 16, 2020, a fire occurred in a spray paint booth (the "Booth") on Plaintiffs' property that damaged both the Booth and the building that housed the Booth.[7] The Booth had been shut down at approximately 2:45 p.m. on May 15, 2020.[8] The fire was discovered by Plaintiffs' employees on the evening of May 16 and was extinguished by the William Cameron Engine Company at approximately 9:20 p.m., although the Booth and building nevertheless sustained significant

---

[3]   Doc. 11-2 at 2.
[4]   *Id.* at 2-5.
[5]   *Id.* at 5-8.
[6]   *Id.* at 6.
[7]   *Id.* at 9; Doc. 15 at 5.
[8]   Doc. 15 at 5-6.

damage from the fire.[9] Two days later, Plaintiffs filed a claim with Century pursuant to the Policy.[10]

Century hired NEFCO Fire Investigations ("NEFCO") to conduct a fire cause and origin investigation, as well as a fire scene analysis.[11] NEFCO inspected the building and Booth on May 20, 2020 and June 9, 2020.[12] NEFCO thereafter issued a report in which it concluded that cotton rags were laying on the floor near where the fire had occurred, and the fire suppression system did not function properly at the time of the fire due to a loose fitting in the system.[13] NEFCO ultimately determined that the fire was caused by a spontaneous combustion of cotton rags that were left in the Booth.[14]

As a result of this report, Century denied Plaintiffs' insurance claim.[15] Century informed Plaintiffs that it had denied their claim because certain protective safeguards were not employed at the time of the fire, including: (1) the failure to maintain a fully functional, actively engaged NFPA 33 approved Spray booth with proper exhaust system and fire extinguishing system; (2) Plaintiffs' failure to keep

---

[9]   *Id.* at 6.
[10]  Doc. 11-2 at 9.
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*; Doc. 11-6 at 3-4, 6.
[14]  Doc. 11-6 at 6.
[15]  Doc. 15 at 11; Doc. 1-3 at 49-55.

all flammables in an approved storage cabinet; and (3) Plaintiffs' failure to store used or soiled rags in a self-closing metal container and remove them daily.[16]

After the completion of discovery, Century moved for summary judgment, asserting that judgment was appropriate in its favor as to Plaintiffs' claims of detrimental reliance, bad faith, and breach of contract, and as to Century's counterclaim for declaratory judgment.[17] Plaintiffs conceded that summary judgment was warranted as to their detrimental reliance claim, but otherwise opposed Century's motion.[18]

This Court granted in part and denied in part Century's motion for summary judgment (the "Order").[19] Based upon Plaintiffs' concession regarding its claim for detrimental reliance, the Court granted judgment in favor of Century on that claim.[20] However, the Court denied Century's motion as to Plaintiffs' claim of bad faith after concluding that a jury could reasonably determine that Century lacked a reasonable basis for denying Plaintiffs' insurance claim, and knowingly or recklessly disregarded its lack of a reasonable basis.[21] Specifically, the Court found that there was no evidence in the record that the rags allegedly discovered in the Booth were

---

[16]  Doc. 15 at 11-12; Doc. 1-3 at 54.
[17]  Doc. 11.
[18]  Doc. 15.
[19]  Doc. 25.
[20]  Doc. 24 at 5 n. 22.
[21]  *Id.* at 8-15.

used or soiled, and therefore Century could not reasonably deny coverage on that basis.[22]

Furthermore, although Century asserted that Plaintiffs failed to comply with the requirement that they maintain a fully functional fire suppression system, this Court determined that such a requirement was a condition subsequent, and Plaintiffs need only have substantially complied with that requirement.[23] Based upon Plaintiffs' actions, the Court further determined that a reasonable jury could conclude that Plaintiffs had substantially complied with that requirement, and that Century knew it lacked a reasonable basis to deny the claim on that ground.[24] Lastly, the Court denied summary judgment as to Plaintiffs' breach of contract claim because genuine issues of material fact remained as to whether Plaintiffs complied with the protective safeguard endorsements and, therefore, whether Century breached the contract by denying coverage.[25]

Century has now filed a motion to certify an interlocutory appeal or, in the alternative, for reconsideration of the Court's Order denying summary judgment.[26] Century contends that interlocutory appeal is warranted because the Order involves a controlling question of law—whether the protective safeguard endorsement related

---

[22]   *Id.* at 9-11.
[23]   *Id.* at 11-13.
[24]   *Id.* at 13-15.
[25]   *Id.* at 15-17.
[26]   Doc. 27.

to the maintenance of a fire suppression system is a condition subsequent.[27] Century further argues that there is a substantial ground for differences of opinion regarding the correctness of the Order, and an immediate appeal would materially advance this litigation, as a ruling in its favor would effectively terminate this litigation.[28] In the alternative, Century requests reconsideration of the Order, on the ground that the Court's conclusion that the protective safeguard endorsement is a condition subsequent is clearly erroneous, as was its determination that Plaintiffs' bad faith claim should proceed to trial.[29]

Plaintiffs oppose Century's motion to certify an interlocutory appeal or for reconsideration, and Century has filed a reply brief, rendering this matter ripe for disposition.[30] For the following reasons, the motion will be denied.

## II.   DISCUSSION

### A.   Motion to Certify Interlocutory Appeal

A district court may certify an order for interlocutory appeal if it determines that: (1) the order "involves a controlling question of law;" (2) "there is substantial ground for difference of opinion" as to that question of law; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."[31] "The party seeking interlocutory appeal bears the burden of proving

---

[27] Doc. 28 at 3-4.
[28] *Id.* at 4-9.
[29] *Id.* at 9-15.
[30] Docs. 29, 30.
[31] 28 U.S.C. § 1292(b).

that all three of the certification requirements have been met."[32] Certifying an order for interlocutory appeal "under § 1292(b) is appropriate only when the party seeking leave to appeal 'establishes exceptional circumstances to justify a departure from the basic policy of postponing review until after the entry of final judgment.'"[33] "In part, this stems from the fact that piecemeal litigation is generally disfavored by the [United States Court of Appeals for the] Third Circuit."[34] "[E]ven if all statutory criteria are met, the decision to grant certification remains wholly within the discretion of the district court."[35]

First, as to the question of whether the Order involves a controlling question of law, the Third Circuit has held that "[a] controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal."[36] The word controlling has been defined as "serious to the conduct of the litigation in a practical or legal sense."[37] Here, there is little question that the Order involves a controlling question of law; not only would an incorrect result necessitate reversal on appeal, but the question of whether Plaintiffs must have strictly complied with the protective safeguard endorsement is "serious to the

---

[32] *Giant Eagle, Inc. v. Am. Guarantee & Liab. Ins. Co.*, No. 2:19-CV-00904-RJC, 2022 WL 19780, at *3 (W.D. Pa. Jan. 3, 2022).

[33] *In re JRV Grp. USA L.P.*, No. 19-11095 (KBO), 2022 WL 3646288, at *4 (D. Del. Aug. 24, 2022) (quoting *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989) (brackets omitted)).

[34] *Id.* (brackets and internal quotation marks omitted).

[35] *Giant Eagle*, 2022 WL 19780 at *3.

[36] *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

[37] *Consumer Fin. Prot. Bureau v. Navient Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. 2021) (quoting *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 633 (D.N.J. 2014)).

conduct of the litigation."[38] Consequently, the first requirement for certification of an interlocutory appeal is met.[39]

Second, with respect to whether there is a substantial ground for difference of opinion, such a difference "must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation."[40] "However, 'a party's strong disagreement with the Court's ruling does not constitute a substantial ground for difference of opinion, nor does a dispute over the application of settled law to a particular set of facts.'"[41]

Here, Century bases much of its motion on the contention that this Court's opinion conflicts with other caselaw. The Court cannot agree. As an initial matter, the majority of the caselaw to which Century cites involves precedent outside of Pennsylvania, applying the law of other states.[42] In instances where those states do

---

[38] *Id.*

[39] Plaintiffs assert that certification is inappropriate, in part, because the Order involves a mixed question of fact and law. Doc. 29 at 8-9. While Plaintiffs are correct that the denial of summary judgment involved questions of fact, an interlocutory appeal would presumably involve a pure question of law—whether the protective safeguard endorsement related to the maintenance of a fully functional fire suppression system is a condition precedent or condition subsequent.

[40] *Navient*, 522 F. Supp. 3d at 113 (quoting *Karlo v. Pittsburgh Glass Works, LLC*, No. 2:10-CV-1283, 2014 WL 12539666, at *1 (W.D. Pa. July 3, 2014).

[41] *Id.* (quoting *Karlo*, 2014 WL 12539666, at *1 (brackets and ellipsis omitted)).

[42] *See Scottsdale Ins. Co. v. Logansport Gaming, L.L.C.*, 556 F. App'x 356, 359-360 (5th Cir. 2014); *Chaucer Corp. Capital (No. 2) Ltd. v. Norman W. Paschall Co.*, 525 F. App'x 895, 896 (11th Cir. 2013); *Great Lakes Reins, (UK), PLC v. JDCA, LLC*, 2014 WL 6633039, at *11 (D. Conn. Nov. 21, 2014); *Am. Way Cellular, Inc. v. Travelers Prop. Cas. Co. of Am.*, 157 Cal. Rptr. 3d 385, 398 (Cal. Ct. App. 2013). Century relies more heavily on *Scottsdale* that on the other out-of-state cases. Doc. 28 at 6-7. That case, however, relied solely on the language contained in the insurance contract when that court determined that "the Policy's use of the phrase 'in complete working order' to modify 'maintain' leaves no doubt that diligence alone is not enough to satisfy the plain terms of the Policy." *Scottsdale*, 556 F. App'x at 359. That is in marked contrast to the situation here, where a determination of whether Plaintiffs must have

not follow Pennsylvania's rule that "substantial compliance with a condition subsequent [of an insurance policy is] sufficient,"[43] cases applying the law of those states simply cannot conflict with this Court's opinion. Moreover, the cases that apply Pennsylvania law do not conflict with the Order, as those cases involved significantly different circumstances.

For example, in *Berenato v. Seneca Speciality Insurance Company*,[44] the Honorable Cynthia M. Rufe of the United States District Court for the Eastern District of Pennsylvania examined whether an insurance claim was properly denied on the ground that the insured failed to comply with the protective safeguard endorsement requiring that the insured maintain an automatic sprinkler system.[45] Although the insured had an automatic sprinkler system on the property, that system had been purposefully turned off at that time that a fire occurred on the property, leading the insurer to deny coverage on the ground that the insured had violated that protective safeguard endorsement.[46]

In response to a motion for summary judgment, the insured argued that the protective safeguard endorsement's requirement that he "maintain [the sprinkler system] in complete working order" was ambiguous—an assertion that the court

---

strictly complied with the terms of the endorsements is governed by state law, rather than any ambiguity—or lack thereof—in the contract language.

[43] *Blue Ridge Textile Co. v. Travelers Indem. Co.*, 181 A.2d 295, 300 (Pa. 1962).

[44] 240 F. Supp. 3d 351 (E.D. Pa. 2017).

[45] *Id.* at 354.

[46] *Id.* at 354-55.

rejected, finding that the provision of the insurance contract was unambiguous.[47] The insured further argued that the insurer was prohibited from denying coverage based upon the protective safeguard endorsement because the insured had never received the insurance policy and did not know that the maintenance of a functional sprinkler system was a requirement of the policy; the court likewise rejected that assertion.[48] The court ultimately concluded that, "[b]ecause Plaintiff failed to maintain the sprinkler system in working order, as the Policy required, and Plaintiff had no reasonable expectation of coverage with the system shut off," summary judgment in favor of the insurer was appropriate.[49]

Contrary to Century's argument, the court in *Berenato* never "held that protective safeguard endorsements like the ones at issue are conditions precedent to coverage."[50] Rather, that court never considered whether the protective safeguard endorsement was a condition precedent or condition subsequent. Nor would the court have needed to consider such a question, as it would be beyond peradventure that turning off the sprinkler system necessarily resulted in a failure to substantially comply with the requirement that the insured maintain the sprinkler in complete *working* order. The *Berenato* opinion therefore does not conflict with the Order here.

---

[47] *Id.* at 356-58.
[48] *Id.* at 358-60.
[49] *Id.* at 360.
[50] Doc. 28 at 5.

Similarly, in *Yera, Inc. v. Travelers Casualty Insurance Company of America*,[51] the Superior Court of Pennsylvania analyzed the denial of insurance coverage for a fire where the underlying policy required that the insured maintain an automatic sprinkler system in the building, but the insured had no automatic sprinkler system whatsoever in the building.[52] The Superior Court affirmed the grant of summary judgment in favor of the insurer after concluding that (1) the word "maintain" was unambiguous, (2) equitable estoppel did not prevent the insurer "from enforcing the exclusion" as the insurer did not induce the insured into certifying that the building had a sprinkler system, (3) the insurer did not need to demonstrate prejudice due to the absence of a sprinkler system, and (4) the insurer's delay in denying coverage did not evidence bad faith.[53]

That court found that the insured was not entitled to relief since, "[b]y [the insured's] own admission, the policy required it to either have an automatic sprinkler system in place or to have an automatic sprinkler system in place and fully operational. There is no dispute that [the insured] fulfilled neither contractual requirement."[54] Again, there was no need for the court to analyze whether the protective safeguard endorsement was a condition precedent, since there was no dispute that the failure to have an automatic sprinkler was a clear violation of the

---

[51]   No. 1398 EDA 2013, 2014 WL 10936714, at *1 (Pa. Super. Ct. Apr. 22, 2014).
[52]   *Id.* at *1-2.
[53]   *Id.* at *3-5.
[54]   *Id.* at *3.

terms of the insurance contract, and there could be no argument that the insured substantially complied with the terms of that contract.

Century is, understandably, dissatisfied with this Court's conclusion that Plaintiffs need only have substantially complied with the requirement that they maintain a functional fire suppression system. However, mere disagreement with that decision is insufficient to demonstrate a substantial ground for difference of opinion, and Century has pointed to no conflicting authority that would warrant an interlocutory appeal.

Furthermore, although Century argues that the Court's decision regarding the denial of Century's motion for summary judgment as to Plaintiffs' bad faith claim presents a substantial ground for difference of opinion, the Court also rejects that contention. While Century disagrees with the Court's determination that a reasonable jury could find bad faith, as previously noted, "a party's strong disagreement with the Court's ruling does not constitute a substantial ground for difference of opinion, nor does a dispute over the application of settled law to a particular set of facts."[55] Rather, any ground for difference in opinion "must arise out of doubt as to the correct legal standard, such as conflicting precedent, the absence of controlling law, or complex statutory interpretation."[56] Here, the law regarding claims of bad faith is clearly established, and Century's disagreement

---

[55] *Navient*, 522 F. Supp. 3d at 113 (internal quotation marks, brackets, and ellipsis omitted)).
[56] *Id.* (internal quotation marks omitted).

stems only from the Court's application of the facts to the law, which is not an appropriate basis upon which to certify an interlocutory appeal.[57] Because any difference of opinion does not "arise out of doubt as to the correct legal standard,"[58] the second requirement for certification of interlocutory appeal has not been met, either as to Plaintiffs' breach of contract claim or bad faith claim.

Third, as to whether certification would materially advance the ultimate termination of the litigation, such advancement occurs "where the interlocutory appeal eliminates: (1) the need for trial; (2) complex issues that would complicate the trial; or (3) issues that would make discovery more costly or burdensome."[59] Ordinarily, certification materially advances the litigation if an appeal would "possibly eliminat[e] . . . the need for trial" in the event of a favorable result for the appellant.[60] However, it is well-established that "[c]ertification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set."[61] Therefore, "where discovery is complete and the case is ready for trial, an interlocutory appeal

---

[57] *Id.* Moreover, as discussed below, the Court does not discern any clear error in its prior conclusion that summary judgment in favor of Century is inappropriate.

[58] *Id.*

[59] *Id.* at 114.

[60] *Id.* at 117.

[61] *PennEnvironment v. PPG Indus., Inc.*, No. CV 12-342, 2022 WL 2048082, at *4 (W.D. Pa. June 7, 2022) (quoting *Katz v. Live Nation, Inc.* 2010 WL 3522792, at *3 (D.N.J. Sept. 2, 2010)).

can hardly advance the ultimate termination of the litigation"[62] and would, instead, merely "delay an imminent trial"[63] and result in the matter "languish[ing] on [the Court's] docket for an extended period of time while the parties await a decision from the Third Circuit."[64]

Here, discovery is complete and dispositive motions have been filed and resolved. There remains nothing left but to schedule this matter for trial. Under these circumstances, an interlocutory appeal would not materially advance the litigation but would, instead, postpone trial while the Third Circuit considers any appeal. Such an appeal would likely take more time than a trial. Should the Third Circuit affirm the Order, this matter would proceed to trial months or even years later than would otherwise occur. Century has therefore failed to meet two of the three requirements to certify an interlocutory appeal, and its motion will be denied.

### B.    Motion for Reconsideration

To properly support a motion for reconsideration, a party must demonstrate "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest

---

[62] *L.R. v. Manheim Twp. Sch. Dist.*, 540 F. Supp. 2d 603, 613 (E.D. Pa. 2008) (quoting *Weaver v. Mobile Diagnostech, Inc.*, No. 02–1719, 2007 WL 2463411, at *2 n. 1 (W.D. Pa. Aug. 28, 2007)).

[63] *Id.*

[64] *Heffner v. Murphy*, No. 08-CV-990, 2012 WL 13168024, at *4 (M.D. Pa. July 12, 2012).

injustice."[65]  As to the third ground, in reviewing for clear error, reconsideration is warranted only if the "[C]ourt is left with the definite and firm conviction that a mistake has been committed."[66]  "Thus, [to warrant reconsideration, Century] must show more than mere disagreement with the earlier ruling; [it] must show that the . . . Court committed a direct, obvious, or observable error, and one that is of at least some importance to the larger proceedings."[67]

Century first argues that the Court committed a clear error of law in concluding that the protective safeguard endorsement related to the maintenance of a fire suppression system is a condition subsequent with which Plaintiffs need only have substantially complied.[68]

Century argues that the Policy's language stating that Century "will not pay for loss or damage caused by or resulting from fire if, prior to the fire, [Plaintiffs] failed to comply with any condition set forth," along with the cases to which Century cites, establish that the protective safeguard endorsement is a condition precedent.[69] As discussed above, the cases to which Century cites are inapposite and do not warrant a conclusion that the endorsement is a condition precedent. Nor does the

---

[65] *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (ellipsis and internal quotation marks omitted).

[66] *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008) (internal quotation marks omitted).

[67] *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (brackets, quotation marks, and citation omitted).

[68] Doc. 28 at 10-12.

[69] *Id.* at 10-11.

language to which Century cites mandate such a conclusion since, as discussed in the Court's Memorandum Opinion denying summary judgment, the language contained in the protective safeguard endorsement "creates a forward-looking obligation for Plaintiffs to maintain [the fire suppression] system and requires continuous future action."[70]

The Policy's language stands in contrast to the language relied upon by the Supreme Court of Pennsylvania in *Blue Ridge Textile Company v. Travelers Indemnity Company*.[71] There, the insurance contract explicitly stated that "it is a *condition precedent to the liability* of the insurer and *to the effectiveness of this policy*" that insured's equipment "shall be in the 'on' position while merchandise is contained in said compartment."[72] The court concluded that such "language is plain and unambiguous" and, based on the uncontroversial proposition that courts have "no proper role in the interpretation of a writing which is clear and unmistakable," determined that the condition was a condition precedent that was not subject to the doctrine of substantial compliance.[73]

That language is notably absent from the Policy, and the protective safeguard endorsements do not explicitly provide that they are conditions precedent. To the contrary, the Policy appears to "presume[] a valid contract and refers to a future

---

[70] Doc. 24 at 12-13.
[71] 181 A.2d 295 (Pa. 1962).
[72] *Id.* at 299.
[73] *Id.* at 299-300.

event, which divests a preexisting contractual liability,"[74] thereby rendering the provision a condition subsequent. Specifically, the insurance contract would become void in the future event that Plaintiffs failed to "[a]ctively engage and maintain" the fire suppression system.[75] The contract simply cannot be understood to provide that "the policy does not take effect until the [maintenance] condition is fulfilled."[76]

The presumption of a valid contract is emphasized by a different provision of the protective safeguard endorsement—found in the same paragraph as the maintenance requirement—which requires that Plaintiffs notify Century in the event of a suspension or impairment of certain fire suppression systems.[77] That provision, however, creates an exception to that requirement, and provides that "if part of an Automatic Sprinkler System . . . is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours."[78] The Policy therefore explicitly acknowledges that, in some circumstances, certain protective safeguards may need to be deactivated, and provides that the contract remains valid during a 48-hour grace period if corrective action is taken, even if no notice of that interruption is reported to Century.

---

[74] *Vandergrift v. Pennsauken Sch. Dist.*, No. CV 12-7646 (JS), 2017 WL 6566139, at *11 (D.N.J. Dec. 22, 2017) (quoting 17A C.J.S. Contracts 451)).

[75] Doc. 11-4 at 99.

[76] *Blue Ridge*, 181 A.2d at 299.

[77] Doc. 11-4 at 99.

[78] *Id.*

17

By setting a fixed date for reporting any issue, the Policy ensures that coverage *remains active* during a 48-hour period regardless of whether any malfunction is reported; even if the obligation to report were breached, that breach would only occur after 48 hours, and the contract would have necessarily remained valid prior to that breach. That is the very definition of a condition subsequent. The very fact that the contract remains valid for forty-eight hours without notification supports the conclusion that Paragraph A of the protective safeguard endorsement contains a series of conditions subsequent, not conditions precedent, and that the condition related to maintaining the fire suppression system—also contained in Paragraph A— is likewise a condition precedent.

Consequently, the Court cannot conclude that its prior determination that the protective safeguard endorsement is a condition subsequent was clearly erroneous. Reconsideration on that ground therefore is not warranted.

Lastly, Century argues that the Court committed clear error when it determined that Century was not entitled to summary judgment as to Plaintiffs' bad faith claim.[79] Specifically, Century contends that Plaintiffs produced no evidence of bad faith in the denial of their insurance claim, and "a reasonable but incorrect interpretation of an insurance provision and the law does not amount to bad faith."[80] As this Court noted in denying summary judgment, "to prevail in a bad faith

---

[79] Doc. 28 at 12-15.
[80] *Id.* at 13.

insurance claim . . . a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim."[81]

Here, there was no clear error in the conclusion that there is sufficient evidence of bad faith for that claim to proceed to trial. First, Century argues that it determined, based on NEFCO's report, that used or soiled rags were left in the Booth in violation of the protective safeguard endorsements, and Plaintiffs failed to present any evidence that such a conclusion was unreasonable.[82] The problem with Century's argument is that NEFCO's report does not definitively state that any rags in the Booth were used or soiled. The report makes only three mentions of rags being discovered in the Booth:

> The small pile of debris located between the light fixture and the filter chamber was excavated during the examination. It revealed the remains of a small fiberglass ladder that had been stored along the right wall, a metal paint can lid, pieces of wood, and the remains of several cotton rags. Another pile of cotton rags was discovered lying on the left interior wall of the paint booth. Further inspection of the mixing room revealed several cotton rags lying on the floor and in the workspaces.[83]

> Based on fire pattern analysis, witness statements, and fire dynamics, this fire originated at floor level on the right interior wall of the paint booth. All electrical components were ruled out as a cause of the fire. The remnants of cotton rags were found on the floor within the area of origin. Flammable liquids and other flammable products were used

---

[81]   *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).
[82]   Doc. 28 at 14-15.
[83]   Doc. 11-6 at 4.

during the painting process. Spontaneous combustion cannot be ruled out as a cause of this fire.[84]

This fire originated on the floor within the Junair paint booth. Fire and heat patterns indicated that the area of origin was along the right wall near the front filter chamber. An examination of the debris found in the area of origin revealed the charred remains of cotton rags and other combustible materials. Additional discarded cotton rags were also found on the floor against the opposite wall of the paint booth. All electrical and mechanical components were ruled out as a cause of this fire. The fire was the result of the spontaneous combustion of the discarded cotton rags. Flammable liquids were used during the painting and clean-up process, and the rags used with these materials required proper disposal as recommended by the manufacturer. The improper activation of the fire suppression system allowed the growth and spread of the fire, which extended beyond the paint booth.[85]

This language does not definitively state that the cotton rags that were allegedly present in the Booth at the time of the fire were used or soiled. Although language referencing "discarded cotton rags" and referencing the fact that "rags used with [flammable] materials required proper disposal as recommended by the manufacturer" could be read as indicating that the rags were used and soiled, that language does not support the denial of coverage for two reasons.

First, the language does not definitively—or even strongly—indicate that the rags were used or soiled but, rather, uses passive and inconclusive language. Additionally, nothing in the report indicates how any possible conclusion that the rags were soiled may have been reached—by, for example, stating that the rags were visibly soiled, or that testing was performed on the rags. At most, the report works

---

[84]   *Id.* at 5.
[85]   *Id.* at 6.

backwards by assuming that the rags were the source of the fire, and then assuming that the rags must therefore have been soiled. Second, given the inconclusive language employed in the report, to reach the conclusion that the rags were used or soiled would require an unwarranted logical leap on Century's part.

Given the inconclusive statements made in the report, along with NEFCO's statement that it "would be pleased to conduct additional analyses upon your request,"[86] a jury could reasonably conclude that Century should have requested further information from NEFCO before denying Plaintiffs' claim and, without such information, had no reasonable basis for denying coverage. And case law makes clear that bad faith may arise from an insurer's inadequate "investigation into the facts."[87] As a jury could determine that Century failed to adequately investigate the facts before denying the claim, and that Century's denial of the claim based upon the alleged presence of used or soiled rags was baseless, the Court discerns no clear error in concluding that a jury could find that Century acted in bad faith.

Although Century's denial of coverage based upon the malfunctioning fire suppression system could possibly be termed an incorrect, but honest, denial of coverage by Century, a jury could infer, based on the other, more obviously incorrect reason for denying coverage, that Century did not incorrectly deny coverage based upon the malfunctioning fire suppression system, but instead knew of its lack of a

---

[86] *Id.*
[87] *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999).

reasonable basis to deny the claim and did so anyway. Moreover—although this presents a closer question—a jury could determine that Century "fail[ed] to perform adequate legal research concerning a coverage issue"[88] by failing to uncover caselaw demonstrating that the protective safeguard endorsement is a condition subsequent, and that insureds need only substantially comply with such a condition. This too would support a conclusion that Century did not have a substantial basis upon which to deny Plaintiffs' claim.[89]

In sum, the Court cannot conclude that it committed clear error in determining that, when viewed in the light most favorable to Plaintiffs, the evidence is sufficient to sustain a claim of bad faith. Century's motion for reconsideration on that ground will therefore be denied.

## III.    CONCLUSION

For the foregoing reasons, Century's motion to certify an interlocutory appeal or for reconsideration will be denied.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[88]  *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012) (quoting *Corch Const. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 516 (Ct. Com. Pl. 2003)).
[89]  *Id.*